**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD PREIK,                 ) | Civil Action No. 10 - 1612 |
|          Petitioner,    ) | |
| v.                  ) | Magistrate Judge Lisa Pupo Lenihan |
| DISTRICT ATTORNEY OF ALLEGHENY  ) | |
| COUNTY; ATTORNEY GENERAL OF  ) | |
| THE STATE OF PENNSYLVANIA,    ) | |
|        Respondents.  ) | |

## MEMORANDUM OPINION AND ORDER

## II.    REPORT

Petitioner, Donald Preik, a state prisoner incarcerated at the State Correctional Institution at Forest, located in Marienville, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.    For the reasons that follow, the Petition will be denied.

### A. Relevant Factual and Procedural History

The facts of the crimes as set forth by the Superior Court are as follows:

> The facts and procedural history underlying this appeal were sufficiently set forth by the trial court in its opinion, which we here recite:
>
>> The defendant was charged with a total of sixty·one (61) counts of the following offenses:    involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, invasion of privacy, [and] violation of the Controlled Substance Drug, Device and Cosmetic Act: Possession of a controlled substance.    The charges arose out of the defendant's repeated drugging of his girlfriend and several of her female relatives, including her mother and sisters, writing obscene phrases into their bodies, inserting various items into their bodies, and then

1

photographing them.[1]   On August 15, 2005, the defendant appeared before the court and, in exchange for dismissal of the remaining counts, entered a plea of guilty to the top counts of each information.   Specifically, he entered pleas of guilty to three counts of involuntary deviate sexual intercourse, one count of aggravated indecent assault, two counts of indecent assault, one count of invasion of privacy, and three counts of possession of a controlled substance.   An assessment by the Sexual Offenders Assessment Board was ordered and conducted and preliminary testimony heard on November 17, 2005.   The conclusion of the SVP hearing was held on June 7, and 8, 2006, at which time the court found that the defendant was a "sexually violent predator" within the meaning of the Registration of Sexual Offenders Statute, 42 Pa. Cons. Stat. 9791, *et seq.*   The defendant was subsequently sentenced to three (3) consecutive terms of imprisonment of six (6) to twenty (20) years at each of the IDSI counts, and consecutive terms of imprisonment of one (1) to two (2) years at each indecent assault count, for a total term of imprisonment of twenty (20) to sixty-four (64) years.

Following the imposition of sentence, the defendant filed a motion to withdraw his guilty plea and a motion to modify his sentence.   Following a hearing on June 28, 2006, those motions were denied.   This appeal followed.

ECF No. 22-7, pp. 23-24.

A timely notice of appeal to the Superior Court of Pennsylvania was filed on July 25, 2006, raising the following two claims.

1.     The Trial Court failed to adhere to sentencing requirements and imposed an unreasonable, manifestly excessive and grossly disproportionate sentence; and

---

1 Some of the photographs depicted the victims with various objects, including a champagne bottle, a rubber car toy, and a wiener, inserted into their vaginas, while others depicted appellant using his fingers to expose the vaginal area of the victims.   None of the victims gave appellant permission to take photographs and none had any memory of the event.

2.    The Commonwealth failed to meet its burden to prove by clear and convincing evidence that Petitioner is a sexually violent predator.

The trial court filed its opinion on December 4, 2006 (ECF No. 22-4, pp. 39-44).   The Superior Court subsequently issued a Memorandum Opinion affirming Petitioner's judgment of sentence on November 18, 2007 (ECF No. 22-7, pp. 23-37).   Thereafter, Petitioner filed a Petition for Allowance of Appeal (PAA) (ECF No. 23-1), which was denied by the Supreme Court of Pennsylvania on May 9, 2008 (ECF No. 23-3, p. 21).

On June 30, 2008, Petitioner filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §9541, *et seq.*   Appointed counsel filed an Amended PCRA Petition on November 5, 2008, raising the following claim.

Defendant's plea was involuntary since he only pled guilty due to trial counsel's assurances that there was a plea agreement reached between himself and A.D.A. Scheid for a  sentence of 5-78 years imprisonment.   Defendant was instead sentenced to 20-64 years imprisonment, and if he had known that there was no plea agreement regarding his sentence he would have proceeded to a jury trial.   Hence, trial counsel was ineffective for promising defendant that he would be sentenced to 5-78 years imprisonment pursuant to a plea agreement.

The PCRA court dismissed the petition on December 12, 2008.   Petitioner filed a timely appeal and the PCRA court filed its Opinion denying relief on June 2, 2009 (ECF No. 23-5, pp. 5-9).   On October 23, 2009, the Superior Court affirmed the PCRA Court's dismissal (ECF No. 23-6, pp. 17-19).   The Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal on September 7, 2010.

On October 6, 2010, Petitioner filed a second *pro se* PCRA petition, raising the following claims.

1.     Review should be granted to determine if trial counsel was ineffective as counsel for failing to file a motion to suppress challenging the admissibility of his confession to police, which was obtained in violation of his constitutional rights.

2.     Review should be granted to determine if trial counsel was ineffective for failing to properly investigate and interview the prosecution's witnesses and conduct meaningful pre-trial investigation.

3.     Review should be granted to determine if trial counsel was ineffective for failing to file a motion challenging a 2002 change to the statute of limitations for various sex offenses as a violation of the Ex Post Facto clause.

4.     Review should be granted to determine if the Defendant's constitutional rights were violated when the Defendant was deemed to be a sexually violent predator under Pennsylvania's Megan's Law.

5.     Review should be granted to determine if trial counsel was ineffective for failing to object, or raise a timely appeal, to the Defendant being sentenced with a mandatory minimum.

6.     Review should be granted to determine if the petitioner's sentence is inappropriate under the Sentencing Code and thus violates the Constitution or laws of the Pennsylvania or the Constitution of the United States.

7.     Review should be granted to determine if trial counsel was ineffective for failing to investigate the petitioner's history of mental illness.

8.     Review should be granted to determine if the Defendant was prejudiced by trial court error by being charged and found guilty of multiple offenses of sexual assault for the same criminal act.

9.     Review should be granted to determine if the Defendant was convicted of a crime where there was no evidence to support such a conviction.

10.     Review should be granted to determine if PCRA counsel was ineffective for failing to raise claims that Defendant wished to have raised in his first PCRA petition.

The PCRA court denied the petition on November 29, 2010, noting that all of the claims raised therein were untimely and lacked merit (ECF No. 29-1, pp. 1-2). Petitioner voluntarily withdrew his second PCRA Petition on December 7, 2010 (ECF No. 29-1, pp. 3-4).

December 3, 2010, the petitioner filed a *pro se* Petition for Writ of Habeas in this Court. The Commonwealth filed a Motion for Clarification on January 4, 2011, and Petitioner filed an amended petition on January 24, 2011 raising the following claims.

1. The petitioner's Fifth, Eighth and Fourteenth Amendment rights to Due Process and not to undergo cruel and unusual punishment were violated when the court abused its discretion by imposing a clearly unreasonable and manifestly excessive sentence.

2. The petitioner's Fifth and Fourteenth Amendment rights to due process were violated when the trial court imposed the requirements of Megan's Law on the petitioner as a sexually violent predator.

3. The petitioner's constitutional rights—under Article I, Section 9, Clause 3 and Article I, Section 10, Clause 1 and the Fifth, Sixth and Fourteenth Amendments—were violated due to a change in the statute of limitations after the crimes had been committed.

4. The petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated by counsel's failure to file a motion to suppress statement when the petitioner was not given his Miranda rights or waived them.

5. The Defendant's Fifth and Fourteenth Amendment rights were violated when the Sexually Violent Predator Assessment Board submitted its written report more than 90 days after the petitioner entered his guilty plea.

6. The petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when trial counsel did not file a timely motion to withdraw the petitioner's plea.

7. The petitioner's Eighth Amendment rights were violated by the harshness of the sentence.

8.     PCRA counsel was ineffective for failing to raise grounds that had merit that the petitioner wished to have addressed in his PCRA petition.

## B. Standards Governing Federal Habeas Corpus Review

1.     Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). An application for a writ of habeas corpus may be denied on the merits,

however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

2. <u>Procedural Default Doctrine</u>

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." <u>Gray v. Netherland</u>, 518 U.S. 152 (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Doctor</u>, 96 F.3d at 678; <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. <u>Coleman v. Thompson</u>, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *Id*.; <u>Sistrunk</u>, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); <u>Carter</u>, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. <u>Banks v. Horn</u>, 126 F.3d 206, 211 (3d Cir.

1997) (quoting <u>Johnson v. Mississippi</u>, 486 U.S. 578, 588-89 (1988)).[2]   A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>Carter</u>, 62 F.3d at 595.

Finally, the United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is <u>not</u> a mixed petition requiring dismissal under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).   *See* <u>Wenger v. Frank</u>, 266 F.3d 218, 227 (3d Cir. 2001).   Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims but must not decide the merits of the claims that are barred under the procedural default doctrine.   *Id*.

3.    <u>Standard of Review for Exhausted (but not Procedurally Defaulted) Claims</u>

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.   Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal

---

2.    *See also* <u>Doctor</u>, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.' " Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).   Few state court decisions will be "contrary to" Supreme Court precedent.   "Clearly established Federal law"

should be determined as of the date of the relevant state-court decision.   Greene v. Palakovich, 606 F.3d 85, 95 (3d Cir. 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.   "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"   *Id*. (quoting Williams, 529 U.S. at 407).

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions.   In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial.   The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion.   The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity.   The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial.   It is not even whether it was an abuse of discretion for

her to have done so-the applicable standard on direct review.  The
question under AEDPA is instead whether the determination of the
Michigan Supreme Court that there was no abuse of discretion was
"an unreasonable application of ... clearly established Federal law."
§ 2254(d)(1).

Lett, 130 S. Ct. at 1862.  The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan
> Supreme Court's decision - or, for that matter, the trial judge's
> declaration of a mistrial - was right or wrong.  The latter question,
> in particular, is a close one.  As Lett points out, at a hearing
> before the Michigan Court of Appeals, the state prosecutor
> expressed the view that the judge had in fact erred in dismissing
> the jury and declaring a mistrial.  The Michigan Supreme Court
> declined to accept this confession of error, People v. Lett, 463
> Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the
> reasons we have explained - **whether the trial judge was right or
> wrong is not the pertinent question under AEDPA.**

Id. at 1865, n. 3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's

factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C.

§ 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is

to begin with the [state] court's legal conclusion and reason backward to the factual premises

that, as a matter of reason and logic, must have undergirded it."  Campbell v. Vaughn, 209 F.3d

280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in

reaching a conclusion, a federal court must infer that the state court applied federal law correctly.

Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).  Where the state court fails to

adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the

federal habeas court must conduct a *de novo* review over pure legal questions and mixed

questions of law and fact.   Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).   Petitioner's

claims will be reviewed in accordance with the standards set forth above.

## C. Petitioner's Claims

1.      Sentencing Claims

In his first and seventh claims, Petitioner complains about the length and severity of his

sentence.   Petitioner is not entitled to habeas corpus relief with respect to this claim as he has

failed to allege the denial of any federal constitutional right.    In this regard, a state prisoner may

seek federal habeas corpus relief only if he is in custody in violation of the Constitution or

federal law.   Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d

Cir.), cert. denied, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), cert.

denied, 502 U.S. 902 (1991).

Generally, sentencing is a matter of state criminal procedure and does not fall within the

purview of federal habeas corpus.   Wooten v. Bomar, 361 U.S. 888 (1959).   See also Chapman

v. United States, 500 U.S. 453, 465 (1991) ("[A] person who has been so convicted is eligible

for, and the court may impose, whatever punishment is authorized by statute for his offense, so

long as that penalty is not cruel and unusual...and so long as the penalty is not based on an

arbitrary distinction that would violate the Due Process Clause.").   As such, a federal court

normally will not review a state sentencing determination that falls within the statutory limit,

Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone

does not provide a basis for habeas relief.   Smith v. Wainwright, 664 F.2d 1194 (11th Cir.

1981) (holding that a sentence imposed within the statutory limits can not be attacked in habeas

proceeding).   Accord Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d

Cir. 1984) (a federal court has no power to review a state-imposed sentence in a habeas matter unless it involves a violation of a specific constitutional right). Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, this Court is without power to grant habeas relief. United States v. Addonizio, 442 U.S. 178, 186 (1979) (noting that a criminal sentence was not subject to collateral attack unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair). *Accord* Colon v. Folino, Civil No. 05-2519, 2008 WL 144212, at *9 (M.D. Pa. Jan. 11, 2008).

Here, Petitioner couches his claim as violative of the Eighth Amendment. The Eighth Amendment forbids the imposition of "cruel and unusual punishments." A sentence violates the Eighth Amendment only when it is extreme and "grossly disproportionate to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ( concluding that the Eighth Amendment contains only a narrow proportionality principle that does not require strict proportionality between crime and sentence but rather, forbids only extreme sentences that are grossly disproportionate to the crime.) (citations omitted). In determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. Harmelin, 501 U.S., at 1005. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Id*.

The Supreme Court recently reiterated this narrow proportionality review in Graham v.

Florida, ___ U.S. ___, 130 S. Ct. 2011, 2022 (2010). There, Chief Justice Roberts explained as follows.

> Our cases indicate that courts conducting "narrow proportionality" review should begin with a threshold inquiry that compares "the gravity of the offense and the harshness of the penalty." Solem, 463 U.S., at 290–291. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to his victim or to society by his conduct, and any prior criminal history. *Id.*, at 292–294, 296–297, and n. 22 (considering motive, past criminal conduct, alcoholism, and propensity for violence of the particular defendant); *see also* Ewing, *supra*, at 28–30 (examining defendant's criminal history); Harmelin, 501 U.S., at 1001–1004 (noting specific details of the particular crime of conviction).

> Only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality," *id.* at 1005, should courts proceed to an "intrajurisdictional" comparison of the sentence at issue with those imposed on other criminals in the same jurisdiction, and an "interjurisdictional" comparison with sentences imposed for the same crime in other jurisdictions. Solem, *supra*, at 291–292. If these subsequent comparisons confirm the inference of gross disproportionality, courts should invalidate the sentence as a violation of the Eighth Amendment.

Graham, 130 S.Ct. at 2037 -2038 (Justice Roberts concurring) (some quotations and citations omitted).

Employing this test, the Supreme Court upheld a sentence of life without parole for possession of a large quantity of cocaine, Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991), a challenge to a sentence of twenty-five years to life for theft of a few golf clubs under a state recidivist statute's three-strikes sentencing scheme, Ewing v. California, 538 U.S. 11, 28-31 (2003) and a similar sentence imposed on a defendant convicted on two counts of petty theft. Lockyer v. Andrade, 538 U.S. 63, 73-77 (2003). The Supreme Court also upheld a sentence of life imprisonment with eligibility for parole for a defendant convicted of his third felony theft offense involving the acquisition of a relatively small quantity of property, *i.e.*, fraudulent use of

14

a credit card to secure $80 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses. Rummel v. Estelle, 445 U.S. 263, 285 (1980). The Supreme Court also upheld a forty-year sentence for possession with intent to distribute and actual distribution of marijuana. Hutto v. Davis, 454 U.S. 370, 373-75 (1982).

Thus, the threshold determination in the eighth amendment proportionality analysis is whether Petitioner's sentence was one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. Petitioner's claim fails at this threshold level. I am guided in my analysis by the decision of the Pennsylvania Courts in their review of this claim. As noted by the Superior Court:

> Here, the learned Judge Jo McDaniel, prior to imposing sentence, provided the following reasons on the record in support of her decision to impose a sentence in the aggravated range of the guidelines:
>
> > Well, to the victims, I will say today, having been the date set for sentencing, I hope that this brings you some sort of closure.
> >
> > I hope this serves as a day to the victims, that this is the end and that today is the beginning of a new life, and I urge you to try to move on.
> >
> > Mr. Preik, I did find in mitigation that you did enter a plea of guilty. That you have obviously been remorseful. You have obviously changed your behavior since your arrest, becoming active in the church.
> >
> > However, that does not mitigate the offenses which you committed.
> >
> > This Court is most disturbed by the fact that there are seven different victims in this case that range from their 20s to their 60s.
> >
> > These are all people that had a relationship with one another and had a loving, trusting relationship with you.

I find it particularly offensive that these people came into your home and that they were abused in your home.

I find it even more offensive that this abuse occurred over a period of years and years. It wasn't one occurrence. It wasn't one time that you had slipped and did something wrong.

The impact on the victims being family members – I can't even imagine to know that your mother and your niece and your other relatives were abused over and over and over.

You had the premeditation to research, to acquire drugs, to administer the drugs, to write on the victims, to take their pictures, to derive whatever pleasure you chose from the act. Then to erase the writing on the victims and to hide your acts.

It was only by happenstance, in fact, that you were caught when somebody happened to catch the photos.

I do have – I find that the aggravated circumstances outweigh the mitigating circumstances.

This is an offense gravity score of 12 with a prior record score of 0, which is a suggested sentence of 48 to 66 months in the standard range.

However, this case is somewhat unusual. Since there are all of these different victims, I feel that each victim deserves a separate sentence.

ECF No. 22-7, pp. 28-29.

Moreover, in her opinion Judge McDaniel emphasized the following.

Initially, it bears mention that the sentences imposed by the Court were within the guideline ranges, albeit in the aggravated range, as the Defendant appears to have glossed over this point. He seems to have forgotten altogether that had this Court imposed a guideline sentence at every count, as it is entitled to do, the total term of imprisonment could have reached seventy (70) counts. The aggregate sentence imposed, twenty (20) to sixty four (64) years, was well within the guidelines, and significantly less than the guidelines permitted.

16

Given the events which rose to the charges, the aggregate sentence of twenty (20) to sixty four (64) years was neither inappropriate, nor excessive. The Defendant had repeatedly drugged, violated and photographed the victims over an extended period of years. Victim impact statements produced by the women universally said that prior to becoming aware of the Defendant's actions, they considered him to be a member of their family and placed great trust in him. All seem to have had significant problems overcoming the realization of what was done to them. This Court did consider the fact that Defendant was remorseful, and became involved with the Assembly of God church following his arrest. However, as stated at the time of sentencing, this Court found that "the aggravating circumstances outweigh the mitigating circumstances." The sentence imposed was appropriate given the nature and circumstances of the Defendant's case.

Nor does the fact that the sentences were imposed consecutively raise any meritorious issue. Such a designation is inherently proper. "Long standing precedent of [the Superior] Court recognizes that 42 Pa.C.S.A. §9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." Commonwealth v. Marts, 889 A.2d 608, 612 (Pa. Super. 2005). Imposition of consecutive sentences on a "victim-by-victim" basis has been held to be within the sentencing court's discretion. Commonwealth v. Jones, 613 A.2d 587, 594 (Pa. Super. 2005).

The Defendant's claim that the sentence imposed is essentially a life sentence is both factually incorrect and reflective of a lack of understanding of the sentencing guidelines. As noted above, the actual sentences imposed, as well as this Court's decision to make them consecutive, were well within this Court's discretion. The fact that the Defendant will likely be elderly when he is released does not render the sentence imposed an abuse of this Court's discretion.

Ultimately, the sentence imposed was appropriate and well within this Court's discretion. Though he alleges that the sentence "must have been based at least in part upon this Court's indignation of the facts of this case…," he makes no references to the record in support of this assertion. The Defendant has not shown that the sentence was manifestly excessive, or was in any way an abuse of discretion. Therefore, this claim must fail.

ECF No. 22-4, pp. 41-42.

Petitioner has alleged no specific facts, much less furnished any evidence, showing his sentence is disproportionate to the sentences imposed throughout Pennsylvania, or to the sentences imposed in other jurisdictions, for similarly sexually related offenses where, like here, the perpetrator drugged his victims, people with whom he had relationships with, and then unknowingly placed objects into their vaginas and took photographs of them.    Petitioner likewise failed to present the state court with any specific facts or evidence addressing these subjects.    Pennsylvania state law vests trial courts with the discretion to impose consecutive or concurrent sentences as required by the facts of the case.    *See* <u>Commonwealth v. Burkhardt</u>, 526 Pa. 341, 586 A.2d 375 (1991); <u>Commonwealth v. Hoag</u>, 445 Pa. Super. 455, 665 A.2d 1212 (1995) (generally, in imposing a sentence, court has discretion to determine whether to make it concurrent with or consecutive to other sentences then being imposed or other sentences previously imposed). Under such circumstances, Petitioner has failed to demonstrate that his sentence was grossly disproportionate to his offense.    Thus, he has failed to establish that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.    It follows that the Pennsylvania courts' rejection of this claim was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court.    Thus, Petitioner is not entitled to habeas relief with respect to this claim.

2.    <u>SVP Designation</u>

Petitioner's second claim is that his due process rights were violated when the trial court designated him to be a sexually violent predator  under Pennsylvania's Registration of Sexual Offender's Act (Megan's Law II), 42 Pa. Cons. Stat. §9795.1.    His fifth claim is that his due process rights were violated when the Sexually Violent Predator Assessment Board submitted its

18

written report more than 90 days after he entered his guilty plea. Neither of these claims can provide habeas corpus relief.

In this regard, the habeas statute, 28 U.S.C. § 2254(a), provides United States district courts with subject matter jurisdiction to entertain petitions for habeas corpus relief only from persons who are "in custody" in violation of the Constitution or laws or treaties of the United States. This statutory language requires the habeas petitioner to be "in custody" under the conviction or sentence under attack at the time his petition is filed, *see* Garlotte v. Fordice, 515 U.S. 39 (1995); Maleng v. Cook, 490 U.S. 488, 491 (1989); Carafas v. LaVallee, 391 U.S. 234, 238 (1968), as the purpose of a writ of habeas corpus is to challenge the legal authority under which the petitioner is held in custody. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). The remedy is release. *Id*.; Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002) (noting that habeas relief clearly is limited to discharge of the prisoner if his detention were found to be unlawful); Georgevich v. Strauss, 772 F.2d 1078 (3d Cir. 1985), *cert. denied*, 475 U.S. 1028 (1986). Moreover, the "in custody" requirement is a jurisdictional requirement. Maleng v. Cook, 490 U.S. 488, 490 (1989) ( *per curiam* ).

One of the first cases to encounter this issue is set forth in Williamson v. Gregoire, 151 F.3d 1180 (9th Cir. 1998), *cert. denied*, 525 U.S. 1081 (1999). In that case, the petitioner had been convicted of child molestation in 1990 and, as a result, was required to register as a sex offender under Washington law. This law required the petitioner to register with the county sheriff for the county of his residence, and provide his name, address, date and place of birth, place of employment, crime for which he was convicted, date and place of conviction, any aliases used, and his social security number. He was required to verify his address annually, and if he moved,

he was required to notify the sheriff for the county where he would be living 14 days before

moving.   If he moved out of state, he was required to notify the sheriff for the county from which

he was departing within 10 days of the move.   If he attended an institution of higher education, he

was required to notify the institution's department of public safety.   If he failed to comply with the

sex offender registration law, he could be charged with a felony or misdemeanor.   *Id*. at 1181.

After he had completed serving his 1990 sentence, the petitioner filed a federal habeas

corpus petition challenging his 1990 child molestation conviction.   In reviewing this claim, the

Court of Appeals for the Ninth Circuit made the following observations.

> Yet, even as the Supreme Court has expanded the reach of the "in custody" requirement, it has consistently recognized a clear limitation:   Once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it.   Some of the typical collateral consequences of a conviction include the inability to vote, engage in certain businesses, hold public office, or serve as a juror.

> Thus, the boundary that limits the "in custody" requirement is the line between a "restraint on liberty" and a "collateral consequence of a conviction."   In general, courts hold that the imposition of a fine or the revocation of a license is merely a collateral consequence of conviction, and does not meet the "in custody" requirement.

> The question before us, then, is how to characterize the Washington sex offender law.   If it is a genuine restraint on liberty, then Williamson is "in custody" and we may consider the merits of his habeas petition.   But if application of the sex offender law is merely a collateral consequence of Williamson's conviction, the federal courts are without habeas jurisdiction in this case. . . . [S]everal factors persuade us that the Washington law is more properly characterized as a collateral consequence of conviction rather than as a restraint on liberty.

Williamson, 151 F.3d at 1183.

In making this determination, the Court noted that Supreme Court precedents that found a restraint on liberty relied heavily on the notion of a physical sense of liberty, *i.e.*, "whether the legal disability in question somehow limits the putative habeas petitioner's movement." *Id*. The Court concluded that the requirements of the Washington registration law did not impose a significant restraint on Williamson's physical liberty because the statute did not "target Williamson's movement," or "demand his physical presence at any time or place" notwithstanding that it "might create some kind of subjective chill on Williamson's desire to travel." *Id*. at 1184. Thus, the Court concluded that the district court lacked jurisdiction over the habeas petition as the petitioner was not in custody as required under the statute.

Every other federal court that has considered the issue has concluded that the burdens and requirements of sex offender laws, many much more onerous than the Washington statute, are merely collateral consequences of a conviction and they do not cause a registered sex offender to be "in custody" for purposes of § 2254(a). *See, e.g.*, Virsnieks v.. Smith, 521 F.3d 707, 720 (7th Cir. 2008) (Wisconsin sexual offender law); Leslie v. Randle, 296 F.3d 518, 521-23 (6th Cir. 2002) (Ohio sex offender statute); Henry v. Lungren, 164 F.3d 1240, 1241-42 (9th Cir. 1999) (California sex offender statute); McNab v. Kok, 170 F.3d 1246, 1247 (9th Cir. 1999) (Oregon sex offender law); Coleman v. Arpaio, Civil No. 09-6308, 2010 WL 1707031, at *3 (D.N.J. Apr. 27, 2010) (collecting cases holding that the requirements of sex offenders imposed by state statutes does not satisfy the custody requirement of federal habeas review); Frazier v. People of State of Colorado, Civil No. 08-02427, 2010 WL 2844080 (D. Colo. July 16, 2010) (Colorado sex offender law); Stevens v. Fabian, Civil No. 08-1011, 2009 WL 161216, 1 (D. Minn. Jan. 22, 2009) (Minnesota law); Caires v. Iramina, Civil No. No. 08-110, 2008 WL 2421640 (D. Hawaii June 16,

2008) (Hawaii sex offender law); <u>Davis v. Nassau County</u>, 524 F.Supp.2d 182, 187-89 (E.D.N.Y. 2007) (New York and Oklahoma sex offender laws); <u>Ali v. Carlton</u>, Civil No. 04-398, 2005 WL 1118066 (E.D. Tenn. April 25, 2005) (Tennessee sex offender registration law); <u>Johnson v. Ashe</u>, 421 F.Supp.2d 339, 342-43 (D. Mass. 2006) (Massachusetts sex offender law); <u>Thomas v. Morgan</u>, 109 F.Supp.2d 763, 767 (N.D. Ohio 2000) ("[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus.").

Moreover, at least three Pennsylvania courts have concluded that the Pennsylvania sex offender requirements are insufficient to establish that a petitioner is in custody for purposes of federal habeas corpus review. *See, e.g*, <u>Cravener v. Cameron</u>, Civil No. 08-1568, 2010 WL 235119 (W.D. Pa. Jan. 15, 2010); <u>Story v. Dauer</u>, Civil No. 08-1682, 2009 WL 416277, at *1 (W.D. Pa. Feb.18, 2009) (finding a challenge to the Pennsylvania Megan's law registration requirements not cognizable in a federal habeas proceeding and holding that "[f]or purposes of implementing this [federal habeas] statute, the term 'in custody' as been interpreted not to include the requirement for registration as a sexual predator."); <u>Bankoff v. Pennsylvania</u>, Civil No. 09-2042, 2010 WL 396096 (E.D. Pa. Feb. 2, 2010).[1]

Petitioner has not identified, and this Court has not been able to locate, a single case in which a court found that a habeas petitioner satisfied the § 2254 "in custody" requirement, simply because he was subject to the requirements of a sex offender registration law. Because this is the

---

1. *See also* Brian R. Means, Federal Habeas Manual, § 1:22 (2009) ( "Registration pursuant to a sexual offender registration statute does not satisfy the 'custody' requirement. Nor does the future threat of incarceration for registrants who fail to comply with the registration statute.").

law and Petitioner has offered any persuasive argument to the contrary, he has failed to carry his burden to show that his challenge is properly cognizable as a habeas claim and that he is entitled to relief *via* a federal writ of habeas corpus. *See, e.g.*, Mann v. Jones, 341 Fed. App'x 158 (6th Cir. 2009) ("It bears reminding that Mann faces a substantial burden of proof to demonstrate that he is entitled to habeas corpus relief."). Consequently, he is not entitled to relief with respect to either his second or fifth claims.

3.    Statute of Limitations

Petitioner's third claim is that his constitutional rights were violated due to a change in the statute of limitations after the crimes had been committed. In this regard, Petitioner asserts that all but the charges listed in Count 12 were committed between 1989 and 1999, when the statute of limitations was five years. Because he was not charged with these offenses until after the limitations period was changed to 12 years, his convictions violate the Ex Post Facto Clause of the United States Constitution. U.S. Const. Art. 1, § 10.

The Ex Post Facto Clause applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable. Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n. 3 (1995). The Supreme Court repeatedly has reiterated that "[t]o fall within the ex post facto prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal citation and quotation omitted). To be eligible for habeas corpus relief based on a violation of the ex post facto clause, a petitioner must demonstrate (1) there was a change in the law or policy which has been given retrospective

effect, and (2) the petitioner was disadvantaged by the change, which created a "significant risk of increasing" his punishment. Newman v. Beard, 617 F.3d 775 (3d Cir. 2010) (internal quotations omitted).

A statute passed after an already expired statute of limitations, which revives the right to file a statutorily barred criminal action, is a violation of the Ex Post Facto Clause. *See* Stogner v. California, 539 U.S. 607 (2003). However, a statute enacted before the applicable statute of limitations has run and which extends the time to file a criminal complaint does not violate the Ex Post Facto Clause. *See, e.g.*, Holland v. District Court, Douglas County, State of Colorado, 831 F.2d 940 (10th Cir. 1987), *cert. denied*, 485 U.S. 977 (1988); United States v. Richardson, 512 F.2d 105, 106 (3d. Cir. 1975) ("Congress, of course, has the power to extend the period of limitations without running afoul of the ex post facto clause, provided the period has not already run.").

In 2002, the Pennsylvania General Assembly amended 42 Pa. Cons. Stat. §5552 to provide that the prosecution for certain major sexual offenses—including involuntary deviate sexual intercourse, sexual assault, and aggravated indecent assault—must be commenced within twelve years after the offense is committed. Prior to the 2002 amendments, prosecution for these offenses had to be commended within five years after the offense was committed.

Petitioner was charged with 29 counts of sexual and related offenses at Criminal Information CC200407559 (ECF No. 22-1, pp. 24-31); 1 count at CC2004075622; 23 counts at CC200407565; and 7 counts at CC2005135054. All of these charges were charged as to have occurred between January 1, 1999 and July 1, 2004. Thus, even if all of the crimes had occurred on January 1, 1999, the five year statute of limitations had not expired when the

General Assembly amended Section 5552 to extend the statute of limitations to twelve years. Consequently, there is no violation of the Ex Post Facto Clause with respect to Petitioner's sentence. As such, he is not entitled to habeas corpus relief as to this claim.

4.    Ineffective Assistance of Counsel

Petitioner's fourth, sixth and eighth claims assert ineffectiveness of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id*. at 689. The question is not

whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Id*.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome. *Id*. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687. The Strickland standard applies equally to appellate counsel. Smith v Robbins, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d at 1095. In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id*. Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id*. A state court's determination of whether such strategy or decision was reasonable is a question of law. *Id*. *See also* McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir.) ("[A] state court's conclusion that counsel rendered effective assistance is not a finding of fact subject to deference by a federal court."), *cert. denied*, 510 U.S. 1028 (1993).

In his fourth claim, Petitioner asserts that his trial counsel rendered ineffective assistance

of counsel by failing to file a motion to suppress his statements on the basis that he was not given and had not waived his Miranda rights. The record clearly reflects, however, that appointed counsel filed an Omnibus Pretrial Motion for Relief on February 11, 2005, claiming, *inter alia*, that allegedly inculpatory statements given by Petitioner to police while in custody were the product of duress and/or coercion and not preceded by the required advice of rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) and therefore, should be suppressed (ECF No. 22-3, pp. 6-13). Before a hearing was conducted on the Omnibus Pre-Trial Motion, Petitioner negotiated a plea agreement for the withdrawal of the majority of the charges against him. Thus, as counsel did in fact file a motion to suppress, he cannot be held ineffective for failing to do so.

Moreover, in order for Petitioner to satisfy the prejudice requirement in this ineffective assistance of counsel claim, he must demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S.52, 59 (1985). Petitioner claims that he was not advised that trial counsel had filed the suppression motion and that, if he had known, he would not have pleaded guilty. This contention, however, is belied by the record. First, Petitioner has not shown that there is any likelihood that the motion to suppress would have been granted by the trial court. Specifically, there is no evidence to indicate whether Petitioner was questioned and made inculpatory statements prior to receiving his Miranda warnings, and, if so, what the circumstances were.

Moreover, there is no evidence that trial counsel acted unreasonably. In this regard, the Supreme Court recently decided a substantially similar claim in <u>Premo v. Moore</u>, ___ U.S. ____,

131 S.Ct. 733 (2011), where the issue was whether trial counsel provided ineffective assistance by failing to seek suppression of Moore's confession before advising Moore regarding the plea. After an evidentiary hearing, the state court concluded Moore had not established ineffective assistance of counsel under <u>Strickland because</u> a motion to suppress would have been fruitless in light of the other admissible evidence to which two witnesses could testify.

In agreeing with the state court that suppression would have been futile, the Supreme Court instructed as follows.

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

> These considerations make strict adherence to the Strickland standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude Strickland requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. T here are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the

imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect.  .  .  . Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of Strickland.   The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude Strickland mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

Whether before, during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same: reasonable competence in representing the accused.   In applying and defining this standard substantial deference must be accorded to counsel's judgment.   But at different stages of the case that deference may be measured in different ways.

In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take.   It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived.   The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.

Prosecutors in the present case faced the cost of litigation and the risk of trying their case without Moore's confession to the police.   Moore's counsel could reasonably believe that a swift plea bargain would allow Moore to take advantage of the State's aversion to these hazards.   And whenever cases involve multiple defendants, there is a chance that prosecutors might convince one defendant to testify against another in exchange for a better deal.   Moore's plea eliminated that possibility and ended an ongoing investigation.   Delaying the plea for further proceedings would have given the State time to uncover additional incriminating evidence that could have formed the basis of a capital prosecution. It must be remembered, after all, that Moore's claim that it was an accident when he shot the victim through the temple might be disbelieved.

It is not clear how the successful exclusion of the confession would have affected counsel's strategic calculus.   The prosecution had at its disposal two witnesses able to relate another confession.   True, Moore's brother and the girlfriend of his accomplice might have changed their accounts in a manner

favorable to Moore.   But the record before the state court reveals no reason to believe that either witness would violate the legal obligation to convey the content of Moore's confession.   And to the extent that his accomplice's girlfriend had an ongoing interest in the matter, she might have been tempted to put more blame, not less, on Moore.   Then, too, the accomplices themselves might have decided to implicate Moore to a greater extent than his own confession did, say by indicating that Moore shot the victim deliberately, not accidentally.   All these possibilities are speculative.   What counsel knew at the time was that the existence of the two witnesses to an additional confession posed a serious strategic concern.

Moore's prospects at trial were thus anything but certain. Even now, he does not deny any involvement in the kidnaping and killing.   In these circumstances, and with a potential capital charge lurking,   Moore's counsel made a reasonable choice to opt for a quick plea bargain.   At the very least, the state court would not have been unreasonable to so conclude.

Moore, ___ U.S. ___, 131 S.Ct at 741-743 (internal quotations and citations omitted).

As Respondent points out, this court certainly cannot assume that Petitioner would have proceeded to trial if his confession had been suppressed given the facts and circumstances of the case.   Petitioner faced more than sixty separate criminal charges that involved seven victims, several of whom were related.   All but ten of the counts were withdrawn in exchange for Petitioner's plea.   The Commonwealth had numerous pictures and two videos depicting the various sex acts in which Petitioner engaged.   All seven of the victims would have testified that they did not consent to engage in the sex acts or be photographed or videotaped.   The Commonwealth would also have presented testimony concerning the controlled substances found at Petitioner's house.   Thus, even had the trial court had suppressed Petitioner's statement, the Commonwealth still had ample evidence of Petitioner's guilt.   Thus, counsel could have reasonably advised Petitioner that, because the Commonwealth had sufficient evidence to

support at least some of the many felony charges, his best course of action would be to plead guilty to a reduced number of charges. Thus, Petitioner has failed to show that he is entitled to relief as to his fourth claim.

In his sixth claim Petitioner claims that "[a]fter the lower court did not honor the plea agreement, the Petitioner asked Trial Counsel to withdraw his guilty plea, and Counsel never did." ECF No. 12, p. 13. The record shows that counsel did file a Post Trial Motion to Withdraw Guilty Plea and Motion to Modify Sentence on June 16, 2006. Moreover, as Respondent points out, an independent review of the transcript of Petitioner's guilty plea colloquy indicates that he rationally understood the consequences of his voluntary and knowing choice to plead guilty and that he was fully aware that there was no agreement as to sentencing.

In his state PCRA proceedings, both the trial court and the Superior Court rejected Petitioner's claim that his guilty plea was unknowing and involuntary based on counsel's representations. Specifically, the Superior Court held as follows.

> The record itself belies Preik's underlying claim of an unknowing and involuntary guilty plea. At the plea proceeding, Preik stated on the record that he understood that there was no agreement as to sentencing. The only agreement was that the number of charges would be dropped in exchange for his entry of the plea. The written colloquy also indicates Preik's understanding that he could receive consecutive sentences and that he was not promised anything in exchange for the plea.

> As the PCRA court points out, it appears that Preik is simply unhappy with the length of his sentence. This Court, however, had already determined that the sentence imposed was proper and not an abuse of discretion by the trial court.

ECF No. 23-6, p. 19.

Thus, there is no basis upon which to show any ineffectiveness on the part of trial counsel

and Petitioner is not entitled to relief as to this claim.  *Accord* Gibson v. Vaughn, Civil No. 03-6243, 2004 WL 1438623, at *7 (E.D. Pa. June 25, 2004) ("The record reflects a full and complete colloquy by the Court and the defendant prior to the acceptance of the plea of guilty at which time no such representations were ever made.").

Petitioner's final claim is that his PCRA counsel was ineffective for failing to raise grounds that had merit that Petitioner wished to have addressed in his PCRA petition.  The federal habeas statute specifically provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Accordingly, Petitioner is not entitled to relief as to this claim.

### D. Motion for Discovery

On March 4, 2011, Petitioner filed a Motion for Discovery/Produce Documents.  The broad discovery provisions of the Federal Rules of Civil Procedure do not apply in habeas proceedings.  Harris v. Nelson, 394 U.S. 286, 295 (1969).  Thus, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  To this end, the Rules Governing Section 2254 Cases in the United States District Courts were developed.  Relevant to this case is Rule 6(a), which provides:  "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  To determine whether discovery is appropriate, a court must consider the petitioner's claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are

fully developed, be able to demonstrate that he is ... entitled to relief." <u>Bracy</u>, 520 U.S. at 904, 908–09 (quoting <u>Harris v. Nelson</u>, 394 U.S. 286, 300 (1969)).[3]

As discussed at length above, Petitioner has not presented any specific allegations that show any reason to believe that he may be able to demonstrate that he is entitled to relief. Consequently, his Motion for Discovery should be denied.

### E. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

---

3. Moreover, the United States Supreme Court recently held that, for claims previously decided on the merits by a state court, the Court's "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 563 U.S. ___, 131 S.Ct. 1388, 1398 (2011). The Supreme Court also noted that "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id*. at 1401. Thus, pursuant to <u>Pinholster</u>, it may not serve the interests of judicial economy to consider allowing discovery prior to conducting a review under § 2254(d).

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

/s/ Lisa Pupo Lenihan  
Lisa Pupo Lenihan  
United States Magistrate Judge

Dated: August 12, 2011

cc:     DONALD PREIK  
       GR9938  
       SCI Forest  
       PO Box 945  
       Marienville, PA 16239